*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ASIA DAVIS,

        Plaintiff-Appellant,

v

TIMOTHY GARY ENGLISH, and ALLSTATE
INSURANCE COMPANY,

        Defendants,

and

VHS OF MICHIGAN, INC., d/b/a DETROIT
MEDICAL CENTER,

        Interested Party-Appellee.

UNPUBLISHED
July 10, 2025
1:41 PM

No. 368079
Wayne Circuit Court
LC No. 22-000340-NI

Before: GADOLA, C.J., and RICK and YATES, JJ.

PER CURIAM.

Plaintiff, Asia Davis, appeals of right the trial court's orders directing that nearly the entire amount of $250,000 in allowable expenses available under the no-fault act, MCL 500.3101 *et seq*., must be disbursed to VHS of Michigan, Inc., d/b/a Detroit Medical Center (DMC), in spite of the requirement of equitable apportionment prescribed by MCL 500.3112. This Court very recently ruled in *Mich Head & Spine Institute, PC v Nationwide Mut Fire Ins Co*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 367681); slip op at 3, that the availability of first-party benefits under the Michigan Assigned Claims Plan (MACP) renders a plaintiff medically nonindigent and, therefore, ineligible for Medicaid benefits. This Court further stated in that case that the language used in the no-fault act neither mandates nor prohibits distribution of allowable expenses on a first-in, first-out basis. *Id*. at ___; slip op at 6. Finally, this Court remanded that case, which involved a challenge to the trial court's equitable apportionment under MCL 500.3112 of limited allowable expenses. *Id*. at ___; slip op at 7-8. In light of that decision, which contradicts two presumptions underlying the trial court's rulings in this action, we vacate the trial court's orders for disbursement of allowable expenses, and we remand the case for further consideration.

## I.  FACTUAL BACKGROUND

Plaintiff suffered serious injuries as a passenger in a motor vehicle collision on January 22, 2021.  After the collision, plaintiff was transported by ambulance to a medical facility operated by DMC.  Plaintiff received medical care for weeks as a DMC patient,[1] then she was discharged to a rehabilitation center, and eventually she was discharged to return home on March 26, 2021.  Before her discharge, plaintiff applied for first-party no-fault benefits from the Michigan Assigned Claims Plan (MACP), and defendant Allstate Insurance Company (Allstate) was assigned by the Michigan Automobile Insurance Placement Facility (MAIPF) to deal with plaintiff's claim for first-party no-fault benefits.[2]

On January 11, 2022, plaintiff filed this action demanding first-party no-fault benefits from Allstate and seeking third-party tort recovery from the at-fault driver.  On January 21, 2022, DMC filed a provider action against Allstate, seeking compensation for medical products, services, and accommodations furnished to plaintiff during her extended hospitalization.  Those two cases were consolidated by the trial court, but the order of consolidation was not issued until May 5, 2023.

Facing DMC's claim for $733,974.88 for medical services and accommodations provided to plaintiff as well as plaintiff's request for hundreds of thousands of dollars to cover medical bills (including a Medicaid lien of $111,600.80) and attendant-care services, Allstate filed motions for declaratory relief and disbursement to designate the payees of the $250,000 available for allowable expenses, and to equitably apportion those available funds.

To resolve the dispute over the $250,000 for allowable expenses, the trial court conducted two separate hearings and issued at least four separate orders.  The first hearing, which took place on March 24, 2023, resulted in the entry of an order on April 13, 2023, stating that "Allstate shall equitably reimburse the . . . Medicaid lien" of $111,600.80, and "any amount remaining under the $250,000 cap shall be equitably distributed to [DMC]."  In response, DMC sought reconsideration, and the trial court issued a new order on May 26, 2023, stating that "once the $250,000.00 PIP cap has been exhausted, [plaintiff] is considered to be 'medically indigent' and Medicaid becomes the primary payor."  As a result, "only $300.00 of the Medicaid lien is properly reimbursed from the $250,000.00 PIP cap and [plaintiff]'s Medicaid lien is properly part of her third-party automobile negligence claim with a separate $250,000.00 limit."  But because that order was entered only in the provider action filed by DMC, the trial court issued another order on July 10, 2023, that applied the analysis of the May 26, 2023 order to both consolidated cases, including plaintiff's suit.

---

[1] By all accounts, plaintiff was treated at DMC Grace Sinai Hospital from January 22, 2021 through February 11, 2021, when she was transferred to DMC Detroit Receiving Hospital, where she was treated until February 24, 2021.

[2] "The term 'first-party benefits' is common parlance for 'personal protection insurance benefits' under MCL 500.3015(1)" that "are also informally called 'PIP benefits' even though that acronym does not fit quite right."  *King v Travelers Prop Cas Ins Co*, 345 Mich App 240, 244 n 1; 4 NW3d 804 (2023).

Plaintiff was dissatisfied with the July 10, 2023 order, so she requested reconsideration in a motion filed on July 14, 2023. The trial court held a hearing on that motion for reconsideration on September 6, 2023, and then entered two identical orders in rapid succession on September 18, 2023, and September 21, 2023. Each order decreed "that the full $250,000.00 allowable expense limit permitted under MCL 500.3172(7)(a) is payable by Defendant Allstate to Plaintiff [DMC] for the initial emergency room bill at Sinai Grace Hospital, account number: 280018339604, dates of service January 22, 2021 through February 2021, only, which exhausts the allowable expense limit." Each order added "that Plaintiff [DMC] shall reimburse Optum/Medicaid $300.00." Those two identical orders closed both consolidated cases, and this appeal by plaintiff followed.

## II. LEGAL ANALYSIS

On appeal, plaintiff contends that the trial court erred by failing to designate the appropriate payees to receive first-party no-fault benefits, and the trial court similarly erred by failing to make an equitable apportionment, contemplated by MCL 500.3112, of the limited benefits available for allowable expenses among those entitled to benefits. "Whether the trial court properly interpreted and applied the no-fault act is reviewed de novo." *Mich Head & Spine*, ___ Mich App at ___; slip op at 4. We review the trial "court's exercise of discretion under MCL 500.3112 for an abuse of discretion." *Id.* at ___; slip op at 7. "A trial court necessarily abuses its discretion when it makes an error of law." *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016).

We certainly do not find fault with the trial court for failing to anticipate this Court's rulings in *Mich Head & Spine*, but we note that the trial court built its decision on premises that this Court expressly rejected in *Mich Head & Spine*. First, the trial court stated in two of its orders that "once the $250,000 PIP cap has been exhausted, [plaintiff] is considered to be 'medically indigent' and Medicaid becomes the primary payor[,]" and, "[t]herefore, only $300.00 of the Medicaid lien is properly reimbursed from the PIP cap and [plaintiff]'s Medicaid lien is properly part of her third-party automobile negligence claim [against the at-fault driver] with a separate $250,000.00 limit." Leaving aside the principle that the "availability of [PIP] benefits [under the MACP] render[s] [a] plaintiff medically nonindigent and, therefore, ineligible for Medicaid benefits[,]" *Mich Head & Spine*, ___ Mich App at ___; slip op at 3 (alterations in original), the trial court erred by dictating that the six-figure Medicaid lien was part of plaintiff's third-party claim. Indeed, a solid argument was made to the trial court that the Medicaid lien should have been elevated in priority above the DMC claim to the entire $250,000 in first-party benefits for allowable expenses, and the trial court at first took that position, but later retracted that determination.

Second, the process of equitable apportionment under MCL 500.3112 was pretermitted by the trial court's reliance on the first-in, first-out method for allocating the $250,000 in benefits that were available.[3] To be sure, the no-fault act "neither mandates nor prohibits distribution of benefits on a FIFO [i.e., first-in, first-out] basis[,]" *id.* at ___; slip op at 6, but the trial court considered that

---

[3] All of the parties agree that, as an assigned claim servicing insurer, Allstate was only responsible for $250,000 in allowable expense benefits by dint of MCL 500.3172(7)(a).

approach necessary,[4] which contravened this Court's conclusion that the statutory language affords significant discretion to trial courts in that regard. Indeed, even the appellate briefs filed by DMC and Allstate, which were submitted before this Court issued *Mich Head & Spine*, strenuously insist that the first-in, first-out approach is mandatory under the no-fault act. In light of the discrepancies between this Court's rulings in *Mich Head & Spine* and the trial court's approach to the $250,000 in allowable expense benefits, we vacate the trial court's orders, and we remand the case for further consideration under the principles enunciated in *Mich Head & Spine*.

Vacated and remanded for further consideration. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Christopher P. Yates

---

[4] At the motion hearing on March 24, 2023, the trial court observed that "everyone is going to have to just take a very small portion" of the $250,000 and "everybody has to share." But at the hearing on reconsideration on September 6, 2023, the trial court came around to the position articulated by DMC's counsel, i.e., that the $250,000 "allowable expense cap is payable to [DMC] for the specific date of service, that one bill, [for] the initial ER admission[.]"