*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

D'ANN DE SIMONE,

        Plaintiff/Counterdefendant-
Appellee/Cross-Appellant,

v

DANIEL BARBERIO, doing business as
BARBERIO BUILDERS,

        Defendant/Counterplaintiff-
Appellant/Cross-Appellee.

UNPUBLISHED
July 1, 2021

No. 351424
Ingham Circuit Court
LC No. 16-000178-CZ

Before: GADOLA, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Defendant/counterplaintiff, Daniel Barberio, appeals as of right the order of the circuit court awarding him $23,291.80 in contract damages, $28,502.50 in attorney fees, and $2,008.17 in costs. Plaintiff/counterdefendant, d'Ann de Simone, cross-appeals by right the same order of the circuit court, challenging the circuit court's previous order granting defendant summary disposition of her claim of usury and also challenging the circuit court's calculation of the general contractor's fee and the award of attorney fees to defendant. We affirm in part, vacate in part, and remand to the circuit court for further proceedings.

## I. FACTS

In 2015, plaintiff hired defendant, a general contractor, to renovate and repair her home. The parties executed a contract for the construction, including an attachment entitled Estimate Number 3000, which provided that a 10% general contractor's fee "be applied to the total of the above stated project-labor." The contract also provided that "[i]f any invoice is not paid on its due date, a Late Charge of 2.5% of the invoiced amount will be added every 30 days until said invoice is paid in full. D'Ann de Simone shall pay all costs of collection, including without limitation, reasonable attorney fees." The contract provided that any dispute under the contract would be resolved by arbitration.

-1-

Although the contract provided for change orders to the contract to be made in writing, during construction plaintiff requested numerous changes to the scope of the work, most of which were not made in writing. According to defendant, plaintiff also hired various subcontractors and instructed them to bill him for projects that were not covered under the parties' contract. When defendant presented plaintiff with his final invoice, which included additional charges for the added work and expenses, she refused to pay. Plaintiff apparently does not dispute the quality of the work defendant performed, nor does she dispute that defendant completed the work; rather, plaintiff testified that she refused to pay because she believed that defendant overcharged her.

The parties initially submitted the case to arbitration as agreed under the parties' contract. Before arbitration was completed, however, plaintiff initiated this action against defendant in the circuit court, alleging that the contract was void because the 2.5% late fee on unpaid invoices was usurious. Defendant counterclaimed for breach of contract, seeking the unpaid balance due on the contract, attorney fees, and costs. Defendant also moved for summary disposition of plaintiff's claim under MCR 2.116(C)(7), (8), and (10). The circuit court granted defendant summary disposition of plaintiff's usury claim; defendant's claims remained at issue.

Plaintiff then paid defendant $18,000 toward the balance due on the contract. Defendant moved for summary disposition regarding the remaining amounts sought by his counterclaim. The circuit court granted the motion in part, concluding that plaintiff had breached the contract by failing to pay the remaining amount, but denied defendant's motion for summary disposition regarding additional construction costs, late fees, arbitration fees, and attorney fees. The circuit court determined that because the amount in controversy, other than attorney fees, was now below $25,000, the case no longer fell within its jurisdiction, and directed that the matter be transferred to the district court.

The district court conducted a trial in the matter and found that (1) plaintiff owed defendant the balance due on the contract, (2) the general contractor's fee under the contract was 10% of the total project cost and not limited to 10% of the labor cost, (3) plaintiff owed defendant $17,294.70 in late fees under the contract calculated through the date of the district court's decision, and (4) plaintiff owed $32,905.11 in attorney fees under the terms of the contract. Plaintiff appealed the district court's decision to the circuit court, which affirmed the order of the district court.

Plaintiff applied to this Court for leave to appeal. In lieu of granting leave to appeal, this Court reversed the portion of the circuit court's earlier order in which the circuit court determined that it lacked jurisdiction. This Court concluded that the circuit court had jurisdiction over the case, that the district court lacked subject matter jurisdiction over the case, and that the orders of the district court therefore were void. This Court remanded the case to the circuit court for further proceedings.[1]

The circuit court then tried the case and entered judgment in favor of defendant in the amount of $23,291.80 for damages on the contract. After a hearing on the issue of attorney fees, the circuit court awarded defendant attorney fees of $28,502.50, determining that the reasonable

---

[1] *Simone v Barbiero*, unpublished order of the Court of Appeals, entered August 1, 2018 (Docket No. 342272).

hourly rate was $275 for defendant's primary attorney and $250 for defendant's secondary attorneys. The circuit court further held that defendant was entitled to attorney fees only for the proceedings before the circuit court and not the proceedings before the district court or on appeal from the order of the district court. Defendant now appeals, and plaintiff cross-appeals.

## II. DISCUSSION

### A. ATTORNEY FEES

Defendant challenges the amount of attorney fees awarded to him by the circuit court. Defendant contends that the circuit court erred by limiting the amount of attorney fees awarded to him under the contract to those attorney fees incurred in connection with the circuit court proceedings. Defendant also contends that the circuit court erred when determining the hourly rate for his attorney fees. We agree.

Michigan follows the American Rule regarding attorney fees and costs, under which each party is responsible for his or her own attorney fees unless a statute or court rules authorizes the award of attorney fees. *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193-194; 874 NW2d 367 (2015). Parties, however, may include within a contract a provision for the payment of attorney fees; a contractual provision for payment of reasonable attorney fees is judicially enforceable. *Id*. at 194. A claim for attorney fees under a contractual provision is considered to be a claim for contractual damages, and not an element of costs. *Id*.; see also *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007).

In this case, defendant seeks attorney fees pursuant to the parties' contract. The contract provides that "D'Ann de Simone shall pay all costs of collection, including without limitation, reasonable attorney fees." The circuit court held that under this contractual provision defendant is "entitled to attorney fees and costs as an element of damages pursuant to the contract between the parties." The circuit court also held, however, that the attorney fees awarded to defendant were limited to "the time the case was before this Honorable Circuit Court only, and the fees incurred during the time the case was in the District Court . . . or during the appeal to the Circuit Court and ultimately to the Court of Appeals, shall not be awarded." During the hearing regarding attorney fees, the circuit court explained that although plaintiff's obligation to pay attorney fees arose under the contract, this Court's order vacating the order of the district court essentially vacated any attorney fees incurred as a result of the proceedings before the district court and the resultant appeals from the district court's order.

Defendant contends that under the parties' contract the amount of reasonable attorney fees includes all amounts incurred in collection, regardless of whether the fees were incurred before the district court, circuit court, or this Court, and that the circuit court erred in limiting the amount of attorney fees to those fees arising from the circuit court proceedings. We review de novo the proper interpretation of contractual language. *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 39; 892 NW2d 794 (2017). When interpreting a contract, we give contractual terms their ordinary meanings and construe the provisions to give effect to every word and phrase. *Id*. at 39-40.

The circuit court determined that although defendant's entitlement to attorney fees arose under the parties' contract, nonetheless it could not award attorney fees incurred during the district court proceedings, or the resultant appeals, because this Court vacated the district court proceedings for lack of jurisdiction. Generally, "[w]hen a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void." *Fox v Bd of Regents of Univ of Mich*, 375 Mich 238, 242; 134 NW2d 146 (1965). However, the district court's lack of jurisdiction did not relieve plaintiff of her contractual obligation to compensate defendant for reasonable attorney fees expended to collect from plaintiff under the contract, regardless of whether those collection efforts were expended in the district court or on appeal from the order of the district court. As a result, the circuit court is required to determine whether defendant incurred attorney fees during the district court proceedings, and the resultant appeals, that were costs of collection under the parties' contract, and if so, to determine and award a reasonable attorney fee to defendant.

The circuit court also determined that it was not empowered to award defendant attorney fees related to proceedings before this Court incurred during the previous appeal. Generally, a trial court is without jurisdiction to tax costs on appeal under statutes or court rules. See *Edge v Edge*, 299 Mich App 121, 133-135; 829 NW2d 276 (2012). However, defendant does not seek to tax costs from the prior appeal; rather, defendant seeks to enforce his contract with plaintiff, which permits him to obtain as an element of damages the reasonable attorney fees incurred in seeking to collect from plaintiff under the contract. The circuit court therefore must determine whether defendant incurred attorney fees during the previous appeal to this Court related to collection under the parties' contract, and if so, determine and award a reasonable attorney fee to defendant.

Defendant also contends that the circuit court erred when determining a reasonable hourly rate for his attorney fees. We review for an abuse of discretion a trial court's award of attorney fees. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. We review the trial court's related factual findings for clear error. *Sulaica v Rometty*, 308 Mich App 568, 586; 866 NW2d 838 (2014).

Attorney fees awarded under a contract rather than as an imposition of costs must be reasonable. See *Zeeland Farm Servs, Inc v JBL Enterprises*, Inc, 219 Mich App 190, 195-196; 555 NW2d 733 (1996). The party seeking attorney fees has the burden of proving the reasonableness of the attorney fees sought. *Smith v Khouri*, 481 Mich 519, 528-529; 751 NW2d 472 (2008) (TAYLOR, C.J.); see also *Zeeland Farm Services*, 219 Mich App at 195-196. Although *Smith* did not involve attorney fees arising out of the parties' contract as in this case, the framework set forth by our Supreme Court in *Smith*, and reiterated in *Pirgu*, remains the standard for determining the reasonableness of requested attorney fees.

Our Supreme Court in *Smith* instructed that when determining the reasonableness of an attorney fee, the trial court should first determine the fee customarily charged in the locality for similar legal services, which can be established "by testimony or empirical data found in surveys and other reliable reports." *Smith*, 481 Mich at 531-532. To determine the fee customarily charged in the locality, "trial courts have routinely relied on data contained in surveys such as the Economics of the Law Practice Surveys that are published by the State Bar of Michigan." *Smith*, 481 Mich at 530. "The trial court must then multiply that rate by the reasonable number of hours

-4-

expended in the case to arrive at a baseline figure." *Pirgu*, 499 Mich at 281. It is important to use objective data, such as the State Bar survey, to arrive at a baseline figure. See *Smith*, 481 Mich at 530. "The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee." *Id*. at 531.

After arriving at a baseline figure, the trial court then must consider several factors to determine whether an upward or downward adjustment to the baseline number is appropriate. Building on the Court's decision in *Smith*, and to simplify the analysis, the Court in *Pirgu* combined the six factors cited in *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982), and the eight factors listed in listed in Rule 1.5(a) of the Michigan Rules of Professional Conduct. See *Pirgu*, 499 Mich at 281. Specifically, the trial court must consider the following nonexhaustive factors:

> (1) the experience, reputation, and ability of the lawyer or lawyers performing the services,
>
> (2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,
>
> (3) the amount in question and the results obtained,
>
> (4) the expenses incurred,
>
> (5) the nature and length of the professional relationship with the client,
>
> (6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,
>
> (7) the time limitations imposed by the client or by the circumstances, and
>
> (8) whether the fee is fixed or contingent. [*Pirgu*, 499 Mich at 282.]

To facilitate appellate review, the trial court "should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id*. at 282. When a trial court fails to follow the analysis articulated in *Pirgu*, it errs. *Powers v Brown*, 328 Mich App 617, 624; 939 NW2d 733 (2019).

In this case, after the circuit court determined that defendant was entitled to attorney fees under the parties' contract, defendant presented his bill for attorney fees and costs. Plaintiff requested a hearing on the reasonableness of the fees requested; plaintiff did not dispute the number of hours that defendant asserted were billed by his attorneys, but objected to the hourly rate used to calculate the fees.[2] After a hearing, the circuit court determined that the reasonable

---

[2] On cross-appeal, plaintiff contends that defendant was not entitled to an award of attorney fees because he was not the prevailing party. However, the parties' contract provides that plaintiff is

hourly rate for defendant's attorneys was $275 for the lead attorney, and $250 for the two attorneys assisting the lead attorney. In doing so, however, the circuit court did not apply the *Smith/Pirgu* framework. The circuit court considered the reasonableness factors of Rule 1.5(a) of the Michigan Rules of Professional Conduct in establishing the hourly rates, rather than first "determining the fee customarily charged in the locality for similar legal services," see *Smith*, 481 Mich at 530, and then multiplying that rate by the reasonable number of hours expended to obtain a baseline figure, and then considering the reasonableness factors articulated in *Pirgu* to determine whether an upward or downward adjustment to the baseline figure was appropriate. Remand to the circuit court therefore is necessary to permit the circuit court to first determine the baseline figure in accordance with the *Smith*/*Pirgu* framework, and then consider the factors articulated in *Pirgu*, along with any other relevant factors, to determine whether an upward or downward adjustment to the baseline figure is appropriate.

## B. USURY

On cross-appeal, plaintiff contends that the circuit court erred by granting defendant summary disposition of her usury claim and by failing to find at trial that the 2.5% late fee was usurious. We disagree.

Plaintiff alleged in her complaint that the 2.5% late fee provision of the contract was violative of the prohibition against civil usury, MCL 438.31, and criminal usury, MCL 438.41, and that the contract was therefore void under the wrongful conduct rule. The circuit court granted defendant summary disposition of plaintiff's claim of usury under MCR 2.116(C)(8).[3] We review de novo the trial court's decision to grant or deny summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim. *Id*. When reviewing a motion for summary disposition under MCR 2.116(C)(8), we consider the motion based upon the pleadings alone and accept all factual allegations as true. *Id*.

The wrongful conduct rule generally bars a claim that is based upon the claimant's own illegal conduct. *Orzel v Scott Drug Co*, 449 Mich 550, 558; 537 NW2d 208 (1995). For the wrongful conduct rule to apply, the claimant's conduct must be prohibited under a criminal statute, and there must be a sufficient causal nexus between the claimant's illegal conduct and his or her asserted damages. *Id*. at 561, 564. Here, plaintiff contends that the late fee imposed by the contract is prohibited by the criminal usury statute, MCL 438.41, and also by MCL 438.31, a civil usury statute that bars a claimant from recovering interest based on a civilly usurious note.

We conclude that the trial court did not err by granting defendant summary disposition under MCR 2.116(C)(8) of plaintiff's claim of usury. Late payment charges ordinarily are not

---

obligated to pay defendant all costs of collection, including reasonable attorney fees, and does not condition defendant's entitlement to attorney fees on whether defendant was the prevailing party.

[3] Given our conclusion that summary disposition was proper under MCR 2.116(C)(8), we need not address plaintiff's arguments challenging the additional bases for summary disposition presented under MCR 2.116(C)(7) and (10).

interest, and MCL 438.31 does not apply to them. *Souden v Souden*, 303 Mich App 406, 418; 844 NW2d 151 (2013). Unlike interest, "late fees are similar to liquidated damages, in that they are contractual obligations designed to cover expenses engendered by a breach of contract," while interest is "a charge for the loan or forbearance of money." *Id*. at 419 (quotation marks and citations omitted). Here, the parties' contract provided that a 2.5% late charge would be added every 30 days, and clearly stated that the late fee was a fee, not a finance charge.

Plaintiff argues, however, that the 2.5% late fee was inappropriate as liquidated damages. "A liquidated damages provision is simply an agreement by the parties fixing the amount of damages in case of a breach." *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 508; 579 NW2d 411 (1998). Liquidated-damages provisions are permitted when they are reasonably related to the possible injury suffered and are not unconscionable or excessive. *Id*. In this case, defendant testified that the late charge would help offset some of the damages he incurred by plaintiff's failure to timely pay. We conclude that the trial court did not err by upholding this provision and granting defendant summary disposition under MCR 2.116(C)(8). We further observe that, having granted defendant summary disposition on plaintiff's claim of usury, the circuit court was not obligated to consider the issue again at trial.

## C. GENERAL CONTRACTOR'S FEE

On cross-appeal, plaintiff contends that the circuit court erred by determining that the 10% general contractor's fee provided for in the contract applied to the cost of the entire project rather than only the labor. We disagree.

The primary goal when interpreting a contract is to determine and enforce the intent of the parties. *Edmore v Crystal Auto Sys, Inc*, 322 Mich App 244, 262; 911 NW2d 241 (2017). When interpreting a contract, this Court gives contractual terms their ordinary meanings. *Barton-Spencer*, 500 Mich at 39. In this case, the estimate attached to the contract stated that "[a] 10% general contractors fee will be applied to the total of the above stated project-labor." Plaintiff argues that "project-labor" must be interpreted to mean labor alone. The trial court noted that the hyphenated phrase "project-labor" could be interpreted as either limiting the contractor's fee to only labor costs, or that it could be interpreted as stating that the contractor's fee included the project and labor. It ruled that the hyphen rendered the provision ambiguous, and that the parties could provide proofs regarding whether the clause limited the contractor's fee to 10% of the labor.

A contract is ambiguous "only if it is equally susceptible to more than a single meaning." *Id*. at 40. Whether contract language is ambiguous is a question of law that we review de novo. *Klapp v United Ins Group Agency, Inc*, 468 Mich App 459, 463; 663 NW2d 447 (2003). In this case, we agree with the trial court that the hyphenated phrase was ambiguous. A hyphen is used "to divide or to compound words, word elements, or numbers." *Merriam-Webster's Collegiate Dictionary* (11th ed). Here, the phrase "above stated project-labor" was equally susceptible to two possible meanings: that the contractor's fee applied to the compounded amount of the project including labor, or that the contractor's fee applied only to the labor expended on the project. The trial court did not err by determining that the meaning of this hyphenated phrase was ambiguous and therefore was a question of fact. *Klapp*, 468 Mich App at 469. The trial court also did not clearly err by finding that the 10% contractor's fee applied to the entire contract. Defendant testified that he reviewed the contractor's fee with plaintiff at the beginning of the project and that

he calculated the contractor's fee from all the materials and labor for the project. Plaintiff provided no contrary evidence. We find no error in the circuit court's finding that the 10% contractor's fee was intended to apply to the entire project.

## III. CONCLUSION

We affirm the judgment of the circuit court awarding contract damages to defendant for plaintiff's breach of contract. We vacate the circuit court's award of attorney fees and remand to the circuit court for consideration of defendant's request for attorney fees in conformity with the framework articulated by the Michigan Supreme Court in *Smith* and *Pirgu*. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ David H. Sawyer
/s/ Michael J. Riordan